UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANZA TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARRIS GROUP, INC., <br><br> Defendant. | Case No.: 3:16-cv-01261-BEN-AGS <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> **(ECF No. 22)** |

Pending before the Court is Defendant ARRIS Group, Inc.'s ("ARRIS") Motion to Dismiss Plaintiff Anza Technology, Inc.'s ("Anza") Amended Complaint for patent infringement (Am. Compl., ECF No. 19)[1] for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 22.) Defendant argues that Plaintiff's Amended Complaint does not meet the pleading standard for patent infringement because it fails to inform ARRIS of the accused products

---

[1] This case is one of several related cases that Anza has filed. The other case numbers are 3:16-cv-00585, 3:16-cv-01260, 3:16-cv-01262, 3:16-cv-01263, 3:16-cv-01264, 3:16-cv-01265, 3:16-cv-01266, and 3:16-cv-01267. Anza's allegations are largely the same in each case.

and fails to provide enough factual content that, if accepted as true, states a plausible claim for infringement. (Mot. at 2.) For the following reasons, the Court **GRANTS** the Motion to Dismiss.

## BACKGROUND[2]

Anza Technology, Inc. is a California corporation with its headquarters located in Rocklin, California. (Am. Compl. ¶ 6.) Anza "is a designer, manufacturer, and seller of bonding tools, ESD tools and other products directed to the manufacture and assembly of electronics, in particular the bonding of electrostatic-sensitive devices ['ESDs']." (*Id.*) Plaintiff alleges that Defendant's products infringe certain method claims in two patents, U.S. Patent No. 7,124,927 ("the '927 patent") and U.S. Patent No. 7,389,905 ("the '905 patent") (collectively, the "Asserted Patents"). Anza is owner, by assignment, of the entire right, title, and interest in and to both patents. (*Id.* ¶¶ 11, 12.)

The '927 patent is entitled "Flip Chip Bonding Tool and Ball Placement Capillary," and the allegedly infringed independent claim 16 is directed to a "method of utilizing a flip chip bonding tool and ball placement capillary in a microelectric assembly."[3] (*Id.* Ex. A.) The '905 patent is entitled the "Flip Chip Bonding Tool Tip."

---

[2] The Court is not making any findings of fact, but rather summarizing the relevant allegations of the Complaint for purposes of evaluating Defendant's Motion to Dismiss.

[3] The full text of claim 16 of the '927 patent provides:

> 16. A method of utilizing a flip chip bonding tool and ball placement capillary in a microelectronic assembly, comprising:
>     providing a bonding machine capable of being equipped with a flip chip bonding tool and ball placement capillary having a tip comprised of a dissipative material, the dissipative material having a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to stop all current flow to the device being bonded;
>     equipping the bonding machine with the flip chip bonding tool and ball placement capillary;
>     providing a bonding material that is thermally and electrically conductive;

(*Id.* Ex. B.) Plaintiff alleges infringement of independent claims 53 and 55, which are directed to a "method for using a flip chip bonding tool in microelectronic assembly" and a "method of using an electricaLy [sic] dissipative flip chip bonding tool lip [sic], having a resistance in the range of $10^2$ and $10^{12}$ ohms," respectively.[4] (*Id.*)

---

> melting the bonding material so that the bonding material becomes substantially spherical in shape; and
> electrically connecting at least one component to a substrate by means of pressing the substantially spherical-shaped bonding material, the substantially spherical bonding material being pressed to form a conductive bump.

(Am. Compl. Ex. A.)

[4] The full text of claim 53 of the '905 patent states:

> 53. A method for using a flip chip bonding tool in microelectronic assembly, comprising:
> providing a flip chip bonding machine capable of being equipped with a flip chip bonding tool;
> equipping the flip chip bonding machine with the flip chip bonding tool, wherein the flip chip bonding tool has a tip comprised of a dissipative material wherein the dissipative material has a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to avoid current flow large enough to damage the device being bonded;
> providing a bonding material that is thermally and electrically conductive;
> melting the bonding material so that it becomes substantially spherical in shape; and
> electrically connecting an [sic] at least one component to a substrate by means of the flip chip bonding tool tip pressing the substantially spherical-shaped bonding material against a chip bond pad, wherein the substantially spherical bonding material is pressed to form a conductive bump.

(Am. Compl. Ex. B.)

The full text of claim 55 of the '905 patent provides:

> 55. A method of using an electricaLy [sic] dissipative flip chip bonding tool

ARRIS Group, Inc. is a Delaware corporation with a principal place of business in Suwanee, Georgia. (*Id.* ¶ 7.) Plaintiff alleges that Defendant conducts substantial business in the Southern District of California by selling and/or offering to sell the infringing products. (*Id.* ¶ 3.)

The Amended Complaint identifies that Defendant's accused products "include but are not limited to":

> its router, modem, transmitter, receiver, and transponder products and systems that utilize integrated circuit chips that were manufactured and mounted on printed circuit boards using a 'flip chip' bonding process and sold under the 'ARRIS' brand or as manufactured and sold under other brands (the 'Accused Products'). These products include, but are not limited to the following products and/or product families: Ruckus ZoneFlex, Ruckus Smartcell Gateway, and Touchstone Telephony Gateway wi-fi routers; Touchstone and SURFboard cable modems; C4 Cable Modem Termination Systems and associated modules, including without limitation, C4-RCM-01000W, C4-SCM-02440/-02441/-03441, and FCM-30640W modules; E6000 Converged Edge Routers; the AT and PWRLink II family of transmitters; DR3021, DR3421 and RDR 4002 digital receivers; DX3515 digital transponders; and the Pace HLP4800 products with built in transmitters and receivers.

(*Id.* ¶ 8.) Plaintiff alleges that Defendant "designs, manufactures, and/or assembles or imports products that depend on high density integrated circuit ('IC') chips that are manufactured and mounted on printed circuit boards using a 'flip chip' bonding process

---

> lip [sic], having a resistance in the range of $10^2$ to $10^{12}$ ohms, comprising: providing an electrically dissipatite [sic] flip chip bonding tool tip; bonding a material to a device; establishing a potential between the electrically dissipative flip chip bonding tool [] tip and the device being bonded, wherein establishing the potential between the electrically disspative flip chip bonding tool tip and the device being bonded comprises grounding leads on the device being bonded; and [] allowing an essentially smooth curient [sic] to dissipate to the device, the current being low enough so as not to damage the device being bonded and high enough to avoid a build up of charge that could discharge to the device being bonded and damage the device being bonded.

(*Id.*)

that require special electrostatic discharge ('ESD') handling in the Accused Products' assembly process." (*Id.* ¶ 9). Plaintiff further pleads that the "Accused Products utilize a flip chip bonding technique during manufacture and/or assembly. Flip chip bonding is used for packaging and mounting integrated circuit devices utilized in the Accused Products utilizing dissipative materials during handling so as to reduce ESD damage." (*Id.* ¶¶ 15, 23.) According to Plaintiff, "[f]lip chip bonding in the manner described in claim[s] 16[, 53, and 55] has become the standard for mounting ESD-sensitive devices in order to decrease parasitic resistance, inductance, and capacitance. The method[s] of claim[s] 16[, 53, and 55] to reduce damage to ESD-sensitive devices [are] reflected in a number of manufacturing standards." (*Id.* ¶¶ 16, 24.)

"Defendant manufactures and assembles the Accused Products, or contracts with others to manufacture and assemble the Accused Products, in compliance with one or more of these ESD standards." (*Id.* ¶¶ 17, 25.) "[D]uring manufacture and assembly of the Accused Products, Defendant and/or its contractors, utilize conductive adhesives, such as solder, as packaging interconnects. These packaging interconnects are formed over the wafer in the form of bumps or balls, spherical in shape, which bumps are electrically and thermally conductive. The packaging interconnects—or solder balls—are heated and pressed against die or substrate pads to form a conductive bump or contact point between the die and the flex." (*Id.* ¶ 18; *see also id.* ¶ 26.) Additionally, "the Accused Products use chipsets that utilize mounting systems, including but not limited to ball grid array(s) that are susceptible to damage resulting from ESD. Following proper manufacturing techniques, the Defendant uses assembly tools that feature the infringing dissipative and resistive technology taught by the Asserted Patents." (*Id.* ¶¶ 19, 27.)

Based on these allegations, Plaintiff alleges that the "Accused Products, alone or in combination with other products, directly or alternatively under the doctrine of equivalents infringe each of the limitations of independent claim 16 of the '927 patent [and independent claims 53 and 55 of the '905 patent] in violation of 35 U.S.C. § 271(g) when Defendant imports into the United States or offers to sell, sells, or uses within the

United States a product which is made by the processes described above." (*Id.* ¶¶ 20, 28.)

## DISCUSSION

### I. The Applicable Legal Standard: Form 18 No Longer Applies and *Twombly/Iqbal* Controls

Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must dismiss complaints that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court evaluates whether a complaint supports a cognizable legal theory and states sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In patent cases, courts previously looked to Federal Rule of Civil Procedure 84, which in turn referred to "forms in the Appendix." *See In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012); *Rembrandt Patent Innovations LLC v. Apple Inc.*, Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015). One form in the Appendix was Form 18, a sample complaint for patent infringement that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling 'electric motors' without specifying the model of the accused motors." *Rembrandt Patent*, 2015 WL 8607390, at *2. In 2012, the Federal Circuit held that a complaint sufficiently pleads direct infringement if it follows Form 18. *In re Bill of Lading*, 681 F.3d at 1336 ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control.").

The 2015 Amendments to the Federal Rules abrogated Rule 84, with the notation that it was "no longer necessary." *See* Fed. R. Civ. P. 84 Advisory Committee's note to 2015 amendment; *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *2 (E.D. Pa. July 7, 2016). The 2015 Amendments took effect December 1, 2015. *See* Fed. R. Civ. P. 84; *RAH Color Techs. LLC*, 2016 WL 3632720, at *2. The abrogation of Rule 84 and, in turn, Form 18 means that the Rule 8 pleading

standards as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern in patent cases. *See, e.g.*, *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058 JLS (DHB), 2016 WL 5786936, at *3 (S.D. Cal. Oct. 4, 2016) (applying *Twombly/Iqbal* pleading standards in light of Rule 84's abrogation); *Rembrandt Patent*, 2015 WL 8607390, at *2 ("Rule 84 has been abrogated, so *In re Bill of Lading* no longer controls."); *Tannerite Sports, LLC v. Jerent Enters., LLC*, No. 6:15-cv-00180-AA, 2016 WL 1737740, *5 (D. Or. May 2, 2016) ("Form 18 is no longer on the table; the Court will apply the *Twombly/Iqbal* pleading standard."); *Rah Color Techs. LLC*, 2016 WL 3632720, at *3 ("Following the reasoning of *In re Bill of Lading*, it appears the Federal Rules' amendment abrogating both Rule 84 and the Appendix of Forms means that claims of direct infringement are now also subject to the *Twombly/Iqbal* pleading standard.").

Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277,

1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## II. Sufficiency of the Pleading: Plaintiff's Amended Complaint Fails to Plead Plausible Claims of Infringement

Plaintiff alleges that Defendant infringes the '927 and '905 patents when Defendant, "without authority[,] imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States." 35 U.S.C. § 271(g). The inquiry on a motion to dismiss is whether the facts alleged, if proven, would establish Defendant's liability for infringement. In this case, the Court cannot discern how the Amended Complaint plausibly alleges infringement.

Although Plaintiff identifies the Accused Products with more specificity than it does in the other related cases, Plaintiff does not plead facts that show how the Accused Products plausibly infringe the Asserted Patents. For instance, Plaintiff relies on certain unidentified manufacturing standards to support its allegations of infringement, but it alleges that the patented methods are merely "reflected in" those standards and the Accused Products are manufactured and assembled "in compliance with one or more of these ESD standards." (Am. Compl. ¶¶ 16-17, 24-25.) Accepting these facts as true does not state a plausible claim of infringement. The Amended Complaint does not assert that the standards require use of the patented methods. Nor does the Amended Complaint state that compliance with the standards necessarily results in infringement. Furthermore, these vague manufacturing standard allegations do nothing to help identify the specific infringing chips that are included in Defendant's products.

Plaintiff's other allegations fail to add facts supporting infringement. Plaintiff

alleges that Defendant and/or its contractors "utilize conductive adhesives, such as solder, as packaging interconnects" and "use chipsets that utilize mounting systems" in the Accused Products. (Am. Comp. ¶¶ 18-19, 26-27.) The Court cannot determine how these allegations plausibly plead infringement of the Asserted Patents. Plaintiff needs to explain how the chips in ARRIS's products infringe the Asserted Patents so as to give Defendant notice of its claims.

Moreover, the Amended Complaint appears to lack facts demonstrating that each limitation of the asserted claims has been satisfied. For instance, the same factual allegations are used to plead infringement of both Asserted Patents (*see* Am. Compl. ¶¶ 15-19 (count one for infringement of '927 patent) and ¶¶ 23-27 (count two for infringement of '905 patent)), but the patents seem to have mutually exclusive requirements. While claim 16 of the '927 patent requires a "dissipative material having a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough *to stop all current flow to the device* being bonded," claim 55 of the '905 patent requires a "*smooth cur[r]ent to dissipate to the device*, the current being low enough so as not to damage the device being bonded and high enough to avoid a build up of charge that could discharge to the device being bonded and damage the device being bonded." (Am. Compl. Exs. A, B (emphases added).) As an initial matter, the Court cannot pinpoint which of Plaintiff's generalized allegations relate to these specific limitations. Second, by relying on the same allegations to argue that the Accused Products practice each of these different limitations, Plaintiff has not pled plausible claims. *Cf. Atlas IP, LLC v. Exelon Corp.*, No. 15 C 10746, 2016 WL 2866134, at *6 (N.D. Ill. May 17, 2016) ("Atlas' claim for relief therefore rests on . . . untenable positions. . . . [I]t neglects the fact that its explanation of how the Network Products allegedly practice the Frame and Power Elements means that they almost certainly do not practice the Repeating Cycle Element.").

Plaintiff contends that it can use the discovery process to narrow its infringement contentions. (Opp'n at 9.) The Court finds this argument unpersuasive. *See Apollo Fin.,*

1 | *LLC v. Cisco Sys., Inc.*, No. 2:15-cv-9696, 2016 WL 3234518, at *3 (C.D. Cal. June 7,
2 | 2016) (granting motion to dismiss and rejecting plaintiff's argument that access to
3 | discovery would allow it to state its claims with more specificity).  In the post
4 | *Twombly/Iqbal* era, the Supreme Court has stated that although "Rule 8 marks a notable
5 | and generous departure from the hyper-technical, code-pleading regime of a prior era, . . .
6 | . it does not unlock the doors of discovery for a plaintiff armed with nothing more than
7 | conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a
8 | motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Plaintiff simply fails
9 | to satisfy that standard here.

## CONCLUSION

For the above reasons, the Court **GRANTS** the motion to dismiss.  Because leave to amend should be freely given, *see* Fed. R. Civ. P. 15, the Court will grant Plaintiff leave to file a second amended complaint no later than twenty one (21) days after the date of this Order.

**IT IS SO ORDERED.**

Dated:  November 4, 2016

Hon. Roger T. Benitez
United States District Judge